[Civ. No. 4029. Second Appellate District, Division Two.—March 16, 1923.]

## J. J. MONAHAN, Respondent, v. JESSIE F. WATSON et al., Defendants; G. MITCHELL HOPKINS, Appellant.

[1] PROMISSORY NOTE—FRAUD—WAIVER—EVIDENCE.—In this action on a promissory note, the uncontradicted evidence of one of plaintiff's witnesses having shown that defendant had waived the fraud alleged by him as a defense in his answer and as a cause of cross-action in his cross-complaint, the trial court did not commit reversible error in excluding all evidence offered by defendant to prove his averments of deceit.

[2] ID.—DISCOVERY OF FRAUD—REQUEST FOR EXTENSION—WAIVER.— Where the purchaser of goods, after discovering all the particulars of the alleged fraud of the vendor in connection with the sale, requests an extension of time within which to make payment of a promissory note which had been given for a part of the purchase price of such goods, making certain promises with respect to payment, as the result of which the payee's attorney is induced to refrain from carrying out his instructions to collect

the note as soon as it fell due, the purchaser waives the alleged fraud.

[3] Id.—Express ,Warranty—Parol Evidence.—Where there is a complete written contract of sale, it is not competent to show any express warranty by parol evidence; and implied warranties, and all oral negotiations, are merged in the written contract, and by its terms the parties must be bound.

[4] Id. — Implied Warranty — Pleading — Waiver.—In an action on a promissory note given for a part of the purchase price of certain goods, the provision of section 1767 of the Civil Code, respecting implied warranties, to the effect that one who sells personal property, knowing that the buyer relies upon his advice or judgment, warrants to the buyer that the seller does not know of the existence of any fact concerning the thing sold which would to his knowledge destroy the buyer's inducement to buy, is not available to the defendant where no pleading touches that section of the code.

[5] Id.—Indorsement—Possession—Implied Ownership—Parties.— The payee of a promissory note, in possession of the same, is presumed to own it, although his indorsement thereon, in full or in blank, may stand uncanceled; and he may sue upon such note and his title to the same cannot be inquired into unless it be necessary for the protection of the defendant or to let in a defense which he seeks to make.

[6] Id.—Delay in Affixing Stamps—Pleading.—In an action on a promissory note, if the defendant's pleadings fail to present any issue respecting the validity of the note on account of delay in affixing United States revenue stamps he is in no position to take advantage of any dereliction in stamping the instrument.

[7] Id. — Right to Levy Stamp Tax — Enforcement — Evidence.— While Congress may lay an excise tax upon business operations and may collect such tax by means of stamps, and to force observance of the law may provide penalties for its nonobservance, it is without power to legislate concerning the rules of evidence administered in the state courts.

[8] Id.—Irregularity in Stamping.—A promissory note, even if not regularly stamped, is not void.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chas. W. Fouri for Appellant.

Milton K. Young, Lyndol L. Young, William K. Young and Forrest T. Murray for Respondent.

FINLAYSON, P. J.—This is an action on a promissory note executed by both defendants to plaintiff as the payee. The defendant Watson was not served with summons and did not appear. The defendant Hopkins filed an answer and a cross-complaint wherein he alleged that the note, which had been given for a part of the purchase price of certain personal property in the city of Los Angeles purchased by defendants from plaintiff, was procured by fraud in that plaintiff made certain alleged false and fraudulent representations respecting the property. Hopkins claimed to have been damaged in the sum of twenty thousand dollars by reason of the alleged fraud. The action was tried before a jury. Plaintiff recovered a verdict, and from the judgment entered thereon the defendant Hopkins appeals.

Appellant urges as grounds for reversal: (1) That the court erroneously excluded certain evidence which it is claimed would have established not alone the alleged false and fraudulent representations, but also certain express warranties; (2) that the evidence shows that plaintiff was not the owner or holder of the note, and (3) that all of the requisite United States revenue stamps were not placed on the note at the date of its execution, and that, therefore, that instrument was void and should not have been admitted in evidence.

[1] Upon the uncontradicted testimony of one of respondent's witnesses the trial court held that appellant had waived the fraud alleged by him as a defense in his answer and as a cause of cross-action in his cross-complaint. Because of such waiver the trial court excluded all evidence offered by appellant to prove his averments of deceit. In this there was no reversible error. It seems that respondent, who resided in the east, had instructed his attorney at Los Angeles to collect the note as soon as it fell due. Some three or four days before the maturity of that instrument appellant called upon respondent's attorney and requested him to telegraph to his client for an extension of thirty days within which to pay the note. When making this request for an extension of time appellant told respondent's attorney that the stock of goods which had been sold to defendants, and for which the note had been given, would remain where it then was and thus could be readily levied upon in the event that any action should be brought on the note and

a writ of attachment issued. In acceding to appellant's request the attorney told him that in view of the former's statement that the goods would be allowed to remain where they were he would wire his client for the requested extension. Thereupon the attorney wrote or telegraphed to his client advising him of appellant's request. Some days later he received a telegram in reply notifying him that if appellant would pay one-half of the amount due on the note the requested extension would be granted as to the balance. Upon receipt of his client's telegram the attorney communicated its contents to appellant. In the meantime the attorney, upon his own responsibility, had personally extended the due date of the note. This he did upon the strength of appellant's assurance that the stock of goods would remain where it was and thus be subject to attachment in the event that it should be necessary to bring suit on the note. Appellant not only did not accept respondent's counter-proposal to pay one-half of the note as a condition to any further extension of time, but, shortly after being informed of the latter's telegraphic reply to his request for an extension, sold his entire stock of goods, thus making it impossible for respondent to attach it.

[2] Appellant's conduct was a waiver of any fraud of which respondent may have been guilty when he sold the personal property to defendants. From the averments of the answer and cross-complaint it is evident that at the time when appellant requested the extension of time and induced respondent's attorney to refrain from carrying out his instructions to collect the note as soon as it fell due, appellant had discovered all the particulars of the alleged fraud. This brings the case fairly within the rule announced in *Schmidt* v. *Mesmer*, 116 Cal. 267 [48 Pac. 54], where it was said that, after discovering the deceit, the party defrauded "must stand toward the other party at arm's-length; he must on his own part comply with the terms of the contract; he must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud." To the same effect is *Tucker* v. *Beneke*, 180 Cal. 588, 594, 595 [182 Pac. 299]. Having waived the deceit, if any there was, appellant is not in a position to complain that the trial

court took the issue of fraud from the jury and refused to allow him to introduce evidence in support of his averments of misrepresentation.

[3] There is no merit in appellant's claim that the representations which are set up in his pleadings constituted warranties which it was permissible to prove by parol. The contract of sale was reduced to writing. It was not competent, therefore, to show any express warranty by parol evidence. No rule is better settled than that where there is a complete written contract oral representations or warranties, and implied warranties, and all oral negotiations are merged in the written contract, and by its terms the parties must be bound. (*Kullman etc. Co.* v. *Sugar etc. Co.*, 153 Cal. 725, 731, 732 [96 Pac. 369], and authorities there cited.)

Nor can we perceive that appellant's position is bettered by the invocation of the sections of the Civil Code respecting implied warranties. [4] Section 1767 is to the effect merely that one who sells personal property, knowing that the buyer relies upon his advice or judgment, warrants to the buyer that the seller does not know of the existence of any fact concerning the thing sold which would to his knowledge destroy the buyer's inducement to buy. No pleading touches this section of the code. Section 1771 is to the effect that one who sells or agrees to sell merchandise inaccessible to the examination of the buyer thereby warrants it sound and merchantable—a provision which by no possibility can be held applicable to the case at bar since appellant assisted in taking an inventory of the goods which were the subject of the sale.

[5] There is no merit in the point that the action was not brought by the real party in interest. Respondent, the payee of the note, was a trustee under a written declaration of trust in which two corporations were named as the beneficiaries. One of these was The Standard Tire Company. The property for which the note was given was sold by respondent under his authority as such trustee, and the note was made payable to him as trustee. The following indorsement appears on the note: "For deposit to the account of The Standard Tire Company. J. J. Monahan—Trustee." Wherefore it is claimed that the evidence shows that, when the action was brought, The Standard Tire Company, and not respondent, was the real party in interest. The note

was sent by mail to the attorney who brought the action. He was the attorney of J. J. Monahan, in whose name, as trustee, the action was brought. It matters not whether the note was mailed to the attorney by his client or by The Standard Tire Company. In either event the attorney's possession was his client's possession. And the payee's possession overcame any inference which might have been drawn from the indorsement on the note. The payee of a promissory note, in possession of the same, is presumed to own it, although his indorsement thereon, in full or in blank, may stand uncanceled. He may sue upon such note and his title to the same cannot be inquired into unless it be necessary for the protection of the defendant or to let in a defense which he seeks to make. (*Bomar* v. *Equitable Mortgage Co.,* 111 Ga. 143 [36 S. E. 601].) Here the only defense pleaded was one which, if available at all, could be set up to defeat an action brought by the payee.

[6] The note was dated July 17, 1920. It is claimed that it bears evidence on its face that one of the stamps required by the United States revenue law was not affixed until July 28, 1920. Wherefore it is urged that the instrument is void. Appellant's pleadings do not present any issue respecting the validity of the note on account of delay in affixing the stamps. He is therefore in no position to take advantage of any dereliction in stamping the instrument. (*Oviatt* v. *Wojcicky,* 95 Conn. 562 [111 Atl. 837].) [7] Moreover, while Congress may lay an excise tax upon business operations and may collect such tax by means of stamps, and to enforce observance of the law may provide penalties for its nonobservance, it is without power to legislate concerning the rules of evidence administered in the state courts. (*Duffy* v. *Hobson,* 40 Cal. 240 [6 Am. Rep. 617]; *Thomasson* v. *Wood,* 42 Cal. 416.) [8] The note, even if not regularly stamped, was not void. (*Moore* v. *Moore,* 47 N. Y. 467; *Thomas* v. *State,* 40 Tex. Cr. 562 [76 Am. St. Rep. 740, 46 L. R. A. 454, 51 S. W. 242].)

The judgment is affirmed.

Craig, J., and Works, J., concurred.