[Civ. No. 5208.  First Appellate District, Division One.—August 4, 1927.]

A. L. POWELL et al., Respondents, v. OAK RIDGE ORCHARDS COMPANY (a Corporation), Appellant.

Kaufman & Martell for Appellant.

Webster & Lyon for Respondents.

KNIGHT, J.—The defendant appeals from an adverse judgment in an action for the rescission of a contract for the sale of land, and for the recovery of certain payments made thereunder, one of the grounds of appeal being insufficiency of the evidence to sustain the findings.

On January 3, 1921, plaintiffs entered into the contract in question for the purchase of ten acres of land in San Luis Obispo County belonging to defendant, for the sum of $4,500. An initial payment of $1,125 was made at the time the contract was executed, and it was agreed that the balance should be paid on or before January 3, 1926. The property was set out to young orchard, plaintiffs taking immediate possession and thereafter expending the sum of $215 in caring for and cultivating the same. On February 15, 1923, plaintiffs rescinded the contract upon the ground of fraud, and on April 21, 1923, commenced the within action. Subsequently and on May 15, 1923, defendant served plaintiffs with notice to pay the taxes and the interest on deferred payments as required by the terms of said contract, or that in default thereof defendant would elect to declare immediately due the unpaid portion of the principal sum, together with interest, taxes, and other charges, and thereupon would institute suit for the recovery of the same. Answering the complaint, defendant, besides denying the allegations of fraud, filed a cross-complaint to recover the balance due under said contract.

Upon the issue of fraud the court found, in conformity with the averments of the complaint, that plaintiffs were induced to enter into said contract as a result of fraudulent representations made by defendant to the effect that said property "was of the reasonable value of $4,500.00, and that the same was free from hardpan and that there was no hardpan under or near the surface of said land, nor any hardpan in the district in which said land was situated, and that said land was particularly productive

and was the best orchard and farm land, and that the soil thereof was particularly adapted to the raising of fruit." It further found that said representations were false, and that the same were fraudulently made for the purpose of deceiving plaintiffs and of inducing them to enter into said contract; that said property was in fact "entirely underlaid with hardpan from eight to fourteen inches below the surface of the land, which hardpan was of varying thicknesses and impervious to water; that said land was situated in a district where hardpan generally existed; that the top soil of said land was mixed with boulders and rock and that very little if any of said land was, or is suitable at all for raising fruit; that said land was not worth more than $1,500.00 at the time defendant represented it to be worth $4,500.00." Furthermore, the court found that plaintiffs had no previous experience as orchardists or farmers, nor did they have any knowledge as to the value or character of land, nor any experience in buying such property; and that in entering into said contract they relied wholly upon the representations made to them by defendant.

In our opinion the evidence supports the foregoing findings, some of the essential facts established thereby being as follows: At the time this transaction occurred and for several years prior thereto Powell was employed as agent for the Santa Fe Railroad Company at Hanford, California. He had been engaged in the railroad business practically all his life, and knew nothing of fruit raising or the productivity or fertility of soil. Anticipating retirement from the railroad service he concluded to buy and operate a small fruit ranch, and with that purpose in view, and accompanied by his wife and son, he visited the property in question, where he met Fred Schutte, the superintendent of defendant's properties, who lived upon or near the properties and was authorized by defendant to make sales thereof on a commission basis. All of the business connected with the sale of the property in question to Powell was transacted with Schutte, who went over the property with Powell, and during the tour of inspection, made the representations set forth in the findings, upon which, Powell claims, he wholly relied in buying the property. In July, 1922, which was approximately a year

and a half after plaintiffs had taken possession, they observed that the fruit trees were dying, whereupon Powell, assisted by his son and certain soil experts, made an examination of the soil with an auger, with the result that, after the auger had passed through about twelve or fifteen inches of top soil, they struck hard-pan of solid clay formation. Before the end of the next month, August, 1922, there were 250 dead prune trees in that section of the orchard. In addition to the evidence mentioned testimony of a number of witnesses was offered tending to prove that the property was of little, if any, value as orchard land; that it was not adapted to the raising of fruit. Circumstances were also established from which it may be reasonably concluded that the value of the property was no more than the amount stated by the court in its findings.

With reference to the representations that the land was productive, free from hard-pan, and adapted to fruit raising, the circumstances of the present case are substantially the same as those of the case of *Dickey* v. *Dunn*, 80 Cal. App. 724 [252 Pac. 770], recently decided by this court, the land involved being a part of the identical tract, the sale thereof being negotiated by the same agent, and, regarding the issues of fraud, similar legal contentions were made. In ruling adversely upon these contentions the court said: "The evidence shows that the plaintiff who was by trade a watch maker, had no knowledge of the soil conditions and was without sufficient experience to determine the truth of the representations. Where a purchaser is justified in relying, and in fact does rely, upon false representations his right of action is not destroyed because means of knowledge were open to him (*Teague* v. *Hall*, 171 Cal. 668 [154 Pac. 851]), and while it appears that the plaintiff visited the property before the transfer was made, the evidence sufficiently supports the finding that he relied upon the representations both as to its value and character. The statements as to the character of the soil and as to the water supply . were clearly misrepresentations of facts (*French* v. *Freeman*, 191 Cal. 579 [217 Pac. 515]; *Stone* v. *McCarty*, 64 Cal. App. 158 [220 Pac. 690]). A statement as to value is not always made as a mere expression of opinion. It may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded

as such by the party to whom it was made; and when it is such it is like any other representation of fact, and may be fraudulent representations warranting rescission (*Crandall* v. *Parks,* 152 Cal. 772 [93 Pac. 1018]). Where there is a doubt as to whether or not such representation was intended and understood as the expression of an opinion or a statement of fact the question is one for determination by the trial court (*French* v. *Freeman, supra; Stockton* v. *Hind,* 51 Cal. App. 131 [196 Pac. 122])." In further support of the conclusions reached by the trial court herein that the representations set forth in the findings as to soil conditions were representations of fact upon which plaintiffs had the right to and did rely in entering into said contract may be added the cases of *Groppengiesser* v. *Lake,* 103 Cal. 37 [36 Pac. 1036], and *Scott* v. *Delta Land & Water Co.,* 57 Cal. App. 320 [207 Pac. 389].

That the property in question was properly cared for after plaintiffs took possession was established by evidence showing that during the year 1921 plaintiffs plowed the orchard; that during the first six months of the following year, 1922, Schutte cared for the property, and thereafter the work was performed by Powell's son until July or August, 1922, when the real condition of the soil was ascertained, after which no work was done for the reason that Powell was advised by soil and tree experts to put no more money into the place, that the land was not worth it; and the following month Powell sought a rescission of the contract.

We are unable to sustain defendant's contention that it is not bound by the representations made by Schutte to Powell, and that it was error for the court to admit the same in evidence, for it is a well-recognized principle of law that a party dealing with an agent, who is acting within the scope and authority of his employment, is to be considered as dealing with the principal himself; and in case of a contract, if the agent at the time of making the contract makes any representation, declaration, or admission, whether true or false, touching the matter of the contract, it is treated as the representation, declaration, or admission of the principal himself (*Brandt* v. *Krogh,* 14 Cal. App. 39 [111 Pac. 275]). As already pointed out, Schutte was

in charge of defendant's properties as its ranch superintendent, and was empowered to make sales of said properties, which was sufficient evidence, in our opinion, upon which to base the conclusion that, in making the sale to Powell, Schutte was acting as defendant's agent and not as a middleman.

■ The claim of laches in rescinding the contract is also without merit. In September, 1922, which was the month following the discovery of the soil conditions, Powell went to Orange County, the residence of the defendant corporation, seeking a rescission of the contract. There, in conversation with the officers of said corporation, he offered to return everything he had received by virtue of the contract and demanded repayment to him of the money he had expended thereunder. His offer of rescission was not acted upon at that time, however, said officers informing him that his proposition would be brought before the directors of the company at its next meeting, and that as soon as a decision was reached he would be notified. After waiting vainly for a reply until February 15, 1923, he served formal notice of rescission, and, as already stated, on April 21, 1923, commenced this action. "Where a party protests promptly on discovering that he has been defrauded in making a contract, and then enters into negotiations for a peaceable settlement, which fail, a bill for cancellation of the contract, filed within a reasonable time after such failure, is not barred by laches" (2 Black on Rescission and Cancellation, sec. 544).

■ Moreover, "there is no artificial rule as to the lapse of time or circumstances which will justify the application of the doctrine" of laches (*Kleinclaus* v. *Dutard,* 147 Cal. 245 [81 Pac. 516]), the question of whether or not a party defrauded has rescinded promptly depending upon all the circumstances of the particular case and being primarily one for the trial court to determine (*French* v. *Freeman, supra*) ; and if its conclusions thereon find reasonable support in the evidence the reviewing court will not interfere therewith (*Suhr* v. *Lauterbach,* 164 Cal. 591 [130 Pac. 2]). Interference here, under the circumstances stated, would in our opinion be clearly unwarranted, it appearing that plaintiffs acted with reasonable diligence.

■ The complaint states a cause of action. The absence of allegations explaining the delay in rescinding is accounted for by the fact that the delay was not unreasonable; and the statement in the complaint, through inadvertence, of an erroneous amount plaintiffs claimed was due them upon rescission cannot be considered a serious matter for the reason that the formal notice of rescission served upon defendant conformed to all legal requirements by stating that plaintiffs demanded "the return to them of all moneys paid to said Oak Ridge Orchards Company or otherwise by A. L. Powell and Daphne Powell by reason of the terms and conditions of the said contract," the complaint contained an allegation to the same effect, and admittedly the findings and judgment set forth the correct amount due, providing plaintiffs are entitled to rescind. Therefore the mistake mentioned has not operated to defendant's prejudice, and since objection thereto has been made for the first time on this appeal we think it is void of merit.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.